IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:06-CV-221-D

| | |
|---|---|
| EDNA MURRELL, | ) |
| Plaintiff/Claimant, | ) ) ) ) |
| | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings. Claimant Edna Murrell seeks judicial review of the Commissioner's denial of her application for Disability Insurance Benefits (DIB). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's Motion for Judgment on the Pleadings [DE-10] be granted, Defendant's Motion for Judgment on the Pleadings [DE-16] be denied, and that the case be remanded to the Commissioner for further proceedings.

## STATEMENT OF THE CASE

On January 9, 2001, Claimant filed an application for DIB. She claimed that she became disabled as of February 2, 2000 due to a back condition, diabetes, high blood pressure, depression and anxiety, a sleep disorder, and arthritis. Claimant's application was denied initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on February 13, 2002. After the hearing, on August 22, 2002, the ALJ issued a decision denying plaintiff's claims. The Appeals Council granted Claimant's request for review, vacated the ALJ's decision, and

remanded the case to a new ALJ for further proceedings, including a new hearing. The second hearing took place on January 6, 2005. After that hearing, on March 22, 2005, the ALJ issued a decision again denying plaintiff's claims. The Appeals Council denied Claimant's request for review on August 18, 2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the

Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience, and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the following errors: (1) improper RFC determination by the ALJ; (2) failure by the ALJ to perform a proper credibility assessment; and (3) improper evaluation of treating physicians' opinions.

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (R. 28). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the severe impairments of fibromyalgia, asthma, degenerative disc disease and arthritis of the spine, and osteoporosis. (R. 28). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 28). Next, the ALJ determined Claimant's RFC by considering all of her subjective complaints and reviewing her medical records, and concluded that she had the ability to perform light work activity. (R. 32). At step four, the ALJ found that Claimant had past relevant work experience as a companion, customer service clerk, teller, and audit clerk and that Claimant could return to her past relevant work. (R. 33). Accordingly, the ALJ did not proceed to step five and found that Claimant was not under a "disability," as defined in the Social Security Act, at any time prior to the date that her insured status expired on December 31, 2004. (Id.).

4

## III. The Administrative Hearing

### A. Claimant's Testimony at the Administrative Hearing

Claimant testified at her administrative hearing. (R. 595-621). Claimant was 57 years old at the time of the hearing. (R. 595). She completed high school and lives with her husband. (Id.). Claimant last worked in 1999 or early 2000 as a private health aide. (R. 595-96). She worked at that position for about three or four years. (R. 596). While in that position, Claimant worked mainly at a hospital, until the last six months when she was required to work in private homes. (R. 596-97). While working at the hospital, Claimant rarely had to lift anything more than five pounds, but when she worked in private homes, Claimant had to lift, turn, and assist individual patients who might have weighed as much as 165 pounds. (R. 598). Claimant worked four hours each day as a health aide. (R. 599). During this job she sat for about one half to one hour during each four hour shift. (R. 599-600). The remainder of the time, Claimant was standing or walking. (Id.). Claimant left this job due to severe pain in her back, neck, and arm. (R. 602).

Prior to working as a health aide, Claimant worked for the Bank of New York for eighteen and a half years (R. 600), from 1971 until 1989 (R. 617). The last position she held at the bank was federal reserve adjuster. (R. 600). This position required Claimant to climb ladders to retrieve boxes of checks and paperwork to review and correct mistakes made by tellers. (R. 600, 617). The reason for so much climbing was that most information was not stored on computers at that time, but was stored in hardcopy in boxes. (R. 600). During that job at the bank, Claimant was generally walking and climbing about four or five hours and sitting the remainder of the day. (R. 602). Claimant had to lift about

5

twenty pounds frequently. (Id.). After leaving the Bank of New York, Claimant worked at the Home Savings Bank in White Plains, New York as a teller and customer service representative. (R. 619-20).

When Claimant left her job as a health aide, she was experiencing "traveling pain" in her arms, and shooting pain in her knees and legs. (R. 603). Her rheumatologist diagnosed her with fibromyalgia. (Id.). Claimant's doctors have also told her that she has a bulge on her spine that presses against a nerve causing weakness, but have not discussed surgery as an option. (Id.). Claimant's pain worsens when she moves a lot or tries to read. (R. 604). She also experiences pain at night, which keeps her from sleeping well. (R. 605). Claimant sleeps in a neck collar. (Id.). Claimant testified that it's hard for her to find any comfortable position. (Id.).

Claimant's arm and hand pain inhibits her from bending some of her fingers and causes her to drop things she is holding. (R. 606). Claimant stated that she could probably hold anything under three pounds comfortably in her hand. (Id.). She and her husband moved to North Carolina hoping that better weather would help Claimant's pain, since cold weather makes Claimant's pain more severe. (Id.). Claimant also has stiffness in her shoulders, especially her left shoulder. (R. 607). Her doctors have told her that this stiffness is a result of her neck and spine problems. (Id.). Claimant's doctors have advised her not to reach overhead or in front of her. (Id.).

Claimant also experiences chest pain two or three times each day. (R. 608). She testified that she has had chest pain more frequently in the past nine months, but she does not know the cause of it. (Id.). When Claimant feels the chest pain, she usually lays down to rest and takes a "heart pill." (R. 609).

6

Case 4:06-cv-00221-D   Document 22   Filed 11/08/07   Page 6 of 11

Claimant stated that on a good day she is able to sit comfortably for about 45 minutes before needing to stand or move around. (Id.). On a bad day, Claimant can only sit comfortably for about 30 minutes in a soft recliner. (R. 610). However, in a stiff chair, Claimant can only sit for about 15 minutes. (Id.). Claimant is able to walk for about 30 or 45 minutes, although it's not comfortable. (R. 611). Claimant testified that she only walks because her husband says it's good for her heart. (Id.).

Around the house, Claimant's husband does most of the cooking and cleaning. (Id.). Her children also help out sometimes. (Id.). Claimant's husband also does most of the grocery shopping and laundry, although Claimant can do some light laundry. (Id.). Claimant's husband takes her to the movies sometimes and she goes to church every Sunday. (R. 612). Claimant does not sit through the entire church service, but is able to stand and move around when she needs to. (Id.). Claimant drives occasionally, but out of caution does not drive if her neck and legs are stiff. (R. 613). Claimant used to have many hobbies, but is now unable to do those hobbies. (Id.). For instance, Claimant used to sew, but is now unable to hold her head down. (Id.). Claimant also used to dance, but is now unable to do so because it hurts her back. (Id.). Some of Claimant's medications make her sleepy, so she spends much of the day lying down in the recliner. (R. 614). However, Claimant does watch some T.V., talks to friends when they stop by, and goes for rides with her husband. (Id.). Claimant has trouble holding the phone, so she has been using an earpiece for about two years. (R. 614-15).

In the early 1980s Claimant had a car accident and began seeing Dr. Manspeer, an orthopaedist. (R. 615). Dr. Manspeer told Claimant that she was born with a C spine with a herniated disc, which was aggravated by the accident. (Id.). Claimant was treated with

7

medication and physical therapy for many years. (Id.). During this time, Claimant was working for the Bank of New York. (Id.). Claimant now sees Dr. Beneuse for her back problems, but is looking for a new doctor because Dr. Beneuse does not accept her insurance. (R. 616). Finally, Claimant testified that she is not able to do any work on a full-time basis and would not even attempt to do so due to her suffering. (R. 616-17).

### B. The Vocational Expert's Testimony at the Administrative Hearing

Kimberly Engle testified as a VE at the administrative hearing. (R. 621-26). The VE described Claimant's past work as a companion as light, semi-skilled work with a Specific Vocational Preparation (SVP) of 3 and a Dictionary of Occupational Title (DOT) code of 309.677-010. (R. 622). She described Claimant's past work as a customer service clerk as light, semi-skilled work with an SVP of 6 and a DOT code of 205.362-026. (Id.). She described Claimant's past work as a teller as light, semi-skilled work with an SVP of 5 and a DOT code of 211.362-018. (Id.). She described Claimant's past work as an audit clerk as sedentary, skilled work with an SVP of 7 and a DOT code of 210.382-010, but sedentary to light work as performed. (Id.).

> The ALJ then posed the following hypothetical:
>
> assume a hypothetical person the same age, education and relevant past work experience as the Claimant. Please also assume such a person can occasionally lift 20 pound [sic], frequently lift 10 pounds, can stand and/or walk six hours in an eight hour work day, is restricted to only frequent reaching overhead with the left upper extremity and only frequent use of the neck . . . . would such a hypothetical person be able to do any of the prior relevant work activities?

(Id.). The VE responded in the affirmative. (R. 623). According to the VE, such an individual could perform all of the prior work activities except for the audit clerk position as performed. (Id.). The ALJ then asked the VE a second hypothetical. (Id.).

assume a hypothetical person the same age, education and relevant past work experience as the Claimant. Please also assume that such a person has all the impairments and related limitations as testified to by the Claimant today. Would there be jobs in the local and national economy such a person can perform?

(Id.). The VE responded that there would not be any jobs such a person could perform. (Id.).

The VE was also questioned by Claimant's attorney. (R. 624-26). The VE was asked to refer back to hypothetical claimant number one, except that the claimant could only lift less than five pounds frequently, could use the left hand for repetitive activity only on an occasional basis, and use the neck only on an occasional basis. (R. 624). The VE testified that such an individual would not be able to perform any of Claimant's past relevant work due to the lifting restriction. (Id.). If the hypothetical claimant had marked limitation in the ability to rotate the neck, the VE stated that such an individual also could not return to Claimant's past relevant work, except possibly the individual could work as a companion. (R. 625). Finally, the VE was asked whether a hypothetical claimant who could lift at most five pounds, rather than less than five pounds, could return to any past relevant work. (R. 626). The VE responded that the claimant could perform the work of an audit clerk as normally performed, but not as actually performed. (Id.).

IV. **Pain and Credibility Assessment**

Claimant argues that the ALJ improperly evaluated her credibility, including her testimony about the disabling effects of her pain. The court agrees.

In assessing a claimant's credibility, the ALJ must follow a two step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir.

9

1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. While objective medical evidence of a claimant's pain may be considered, the ALJ may not discredit a claimant's allegations of pain "solely because they are not substantiated by objective evidence of the pain itself or its severity." Id. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, the ALJ found that claimant's "allegations regarding the intensity and frequency of her pain and the extent of her limitations are exaggerated and out of proportion to the findings of her examinations and studies." (R. 29). The ALJ then proceeded to discuss certain medical documentation in the record (R. 29-32), concluding that

> this evidence shows that the claimant's impairments cause more than a minimal adverse impact on her ability to perform some basic work-related activities, [but] it fails to establish that they rise to a disabling level of severity. Accordingly, the claimant's allegations concerning her impairments and their impact on her ability to work are not fully credible.

(R. 32). The ALJ did not provide any other reasons for his adverse credibility findings and did not support his adverse credibility determination with evidence of Claimant's activities of daily living or by reference to Claimant's testimony. The ALJ erred in relying solely on

10

Case 4:06-cv-00221-D   Document 22   Filed 11/08/07   Page 10 of 11

1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. While objective medical evidence of a claimant's pain may be considered, the ALJ may not discredit a claimant's allegations of pain "solely because they are not substantiated by objective evidence of the pain itself or its severity." Id. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, the ALJ found that claimant's "allegations regarding the intensity and frequency of her pain and the extent of her limitations are exaggerated and out of proportion to the findings of her examinations and studies." (R. 29). The ALJ then proceeded to discuss certain medical documentation in the record (R. 29-32), concluding that

> this evidence shows that the claimant's impairments cause more than a minimal adverse impact on her ability to perform some basic work-related activities, [but] it fails to establish that they rise to a disabling level of severity. Accordingly, the claimant's allegations concerning her impairments and their impact on her ability to work are not fully credible.

(R. 32). The ALJ did not provide any other reasons for his adverse credibility findings and did not support his adverse credibility determination with evidence of Claimant's activities of daily living or by reference to Claimant's testimony. The ALJ erred in relying solely on

objective medical evidence in the record to support Claimant's allegations of pain. Additionally, the ALJ discredited the opinion of Claimant's treating physician who opined that Claimant's fibromyalgia rendered her permanently disabled, because the ALJ thought the physician's opinion was based only on Claimant's subjective complaints of pain. (R. 32). Accordingly, the ALJ failed to properly evaluate Claimant's credibility regarding her allegations of pain and the case should be remanded for a proper credibility assessment. Because the court finds that remand is appropriate, it does not reach Claimant's other arguments.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that Claimant's motion for judgment on the pleadings be **GRANTED**, defendant's motion for judgment on the pleadings be **DENIED**, and the case be remanded to the Commissioner for a rehearing consistent with this Memorandum and Recommendation. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 8th day of November, 2007.

DAVID W. DANIEL
United States Magistrate Judge